This is an interpleader suit and the following facts are agreed upon as correct by counsel:
1. On October 1st, 1924, Robert Gemmell was a junior officer of the Prudential Insurance Company and continued as such until his death, which occurred on December 20th, 1926.
2. On October 1st, 1924, the Prudential Insurance Company of America issued its group insurance policy No. 1690, under which a number of officers and employes of said company were insured; there being but one policy issued and certificates issued to the several persons insured thereunder. Two certificates were issued to Robert Gemmell. Originally, neither certificate named a beneficiary. *Page 282 
3. Said insurance policy, in addition to insuring the lives of the certificate holders, contained the provisions and privileges following:
"The Prudential Insurance Company of America, in consideration of the application of the employer for this policy, which is made part of this contract, a copy of which application is attached hereto, and of the payment, in the manner specified, of the premium herein stated, hereby insures the life of each of the persons herein designated as the insured, for the term of three months from the date hereof, subject to readjustment and renewal as hereinafter set forth, for the amount specified herein, payable as provided, subject to the provisions on the second and third pages hereof, which are hereby made part of this contract."
On the second page of said policy it is provided:
"Change of beneficiary. — Any person insured hereunder may at any time, while insured hereunder, change his [or her] beneficiary or beneficiaries under this policy by written notice through the employer to the company at its home office, on a form furnished by it. Such change shall take effect when due acknowledgment thereof is furnished by the company to such person insured and all rights of his [or her] former beneficiary or beneficiaries shall thereupon cease."
On the third page of said policy it is provided:
"Disability before age 60: Waiver of premiums — payment of insurance. — If any person insured under this policy shall become totally and permanently disabled, either physically or mentally, from any cause whatsoever, to such an extent that he [or she] is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his [or her] lifetime, and if such disability shall occur at any time after the payment of the first premium on account of such insurance, while this policy is in full force and effect and the said person is less than sixty years of age, the company, upon receipt of due proof of such disability, will grant the following benefits:
"(1) Waiver of Premiums. — The company will, during successive renewal periods, waive the payment of that portion of each premium under this policy applicable to the insurance on the life of said disabled person the due date of which, as specified on the first page hereof, shall occur after receipt by the company of such proof of such disability.
"(2) Payment of Insurance. — The company will, in addition to waiving the premiums, pay to the said person at its home office the amount insured on his [or her] life, as the employer may request, *Page 283 
either in one sum six months after the company shall have received such proof, or in sixty monthly installments during five years, each installment to be of the amount of $17.95 per $1,000 of insurance payable. The first of such monthly installments shall be paid immediately upon receipt by the company of due proof of such disability and subsequent monthly installments shall be paid on the first day of each month thereafter.
"The total amount of insurance under this policy on the life of the said person at any time after one or more of such installments have been paid shall not exceed the commuted value of such of said installments as are not then due computed at the rate of three and one-half per cent. per annum compound interest.
"Any insurance remaining at the death of the said person shall be paid to the beneficiary or beneficiaries of said person."
4. Two certificates for $5,000 each were issued to Robert Gemmell, which certificates were afterward, by proper endorsement, made payable to the defendant Armena B. Gemmell.
5. Robert Gemmell, on December 16th, 1926, made application to the insurance company for his disability benefits under said policy.
6. The report of the medical examiner showing the permanent disability of Gemmell was dated December 16th, 1926, and his application for disability benefits was approved by the company on December 17th, 1926.
7. On December 18th, 1926, a check was drawn and fully signed by the company to the order of Robert Gemmell for $10,074.80, which on the face thereof stated to be "In full for claim under Policy G. 1690 C. 15 A-G 1690 C. 15." The master policy was No. 1690, and "G" preceding it has reference to the general policy. "C. 15A" and "C. 15" refer to the certificates issued under the general or master policy. Though the check was fully executed on December 18th, it bears date of December 20th, 1926.
8. Robert Gemmell died on December 20th, 1926, prior to the delivery of such check. The Fidelity Union Trust Company is the executor under the will of said Gemmell. Both the executor and the widow, Armena B. Gemmell, claim the proceeds of said certificates; the executor on the theory that the amount thereof was due Gemmell before his death; and the widow claims as beneficiary under the policies. *Page 284 
9. Mr. Dennis, the person authorized to approve the claim of Gemmell, said that upon the payment of a policy the company requires the surrender thereof.
It further appears that two days before his death Mr. Gemmel executed a will by which he left a legacy of $20,000 to his wife, and the balance of the estate to others.
Under the policy the company can pay the insured "as the employer may request, either in one sum six months after thecompany shall have received such proof, or in sixty monthly installments during five years."
On December 16th, 1926, the insured signed an application for payment of the claim alleging total disability. The paper does not specify whether the payment is to be made in a lump sum or in installments. Mr. Gemmell signed it in his home in the presence of William A. Dennis, the company's supervisor of claims, and it was taken by him to the home office. On the same day the medical director of the company, Dr. Patton, signed a certificate certifying to Mr. Gemmell's total disability, and also certifying that some months before he had decided the man was totally disabled. The exhibit was filled in on December 17th. It names the insured, the beneficiary and the character of the policy. It bears Mr. Dennis' approval who says he, as supervisor of claims, is the proper person to approve. The document bears these words — "Certificate canceled. Full amount plus interest paid to insured." Who decided to pay the lump sum instead of installments does not appear, nor does it appear what officer or committee or board in the company has such authority.
The date of total disability is fixed as April 1st, 1926, nine months before the application was signed. Mr. Dennis says the words "Certificate canceled, c." quoted above were placed on the paper because he supposed the certificates had been returned to the company, because the company requires their return before the disability certificate becomes effective.
The certificates were never returned and are still in the possession of the beneficiary. The application bears a further endorsement — "Certificate to be obtained later. H." "H." is Mr. Heller, an assistant manager. These words indicate *Page 285 
that something remained to be done before the transaction was considered complete by the company. After these documents had been approved, a check was drawn on December 18th and dated December 20th. Mr. Dennis says he intended to deliver the check on the 20th and to enter the matter on the company's books on that day. Mr. Gemmell died at eight o'clock in the morning of December 20th. The check was never delivered. Neither can it be said that the check was constructively delivered by putting it in the way of mailing. First, because Mr. Dennis says there was no intention of mailing it. He intended to deliver it in person.Second, because, as a matter of fact, it never was put in the way of mailing.
In response to my questions, Mr. Dennis said it is the duty of the mailing department to mail checks. They are sent from the managing department — a distinct department — to the mailing department. The check never left the managing department. It was last seen there. So it was not only not mailed, but was not even placed in a place from which, if the intention had been to mail, it would have been mailed. The check therefore had no effect.
Section 16, New Jersey Uniform Instruments law (3 Comp. Stat.pp. 3334-3337), says: "Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto." See, also, Polhemus v.Prudential Realty Co., 74 N.J. Law 570.
The company bound itself to pay, not to agree to pay. It never did pay, and the transaction was not completed. Again, Mrs. Gemmell could only be divested of her right under the policy by the manner required by the policy.
In the case of Sullivan v. Marony, 77 N.J. Eq. 565, the court of errors and appeals, through Mr. Justice Parker, said:
"Where a contract of insurance is made payable to designated beneficiaries, and prescribes a procedure for divesting their interest, in favor of another beneficiary, such interest can be divested, in the absence of an assignment by the beneficiaries themselves, only by following the procedure so prescribed." *Page 286 
In Anderson v. Broad Street National Bank, 90 N.J. Eq. 78,
Vice-Chancellor Backes said:
"Whether the interest [of the beneficiary] be regarded as vested or defeasible, contingent, a mere expectancy, or whatever the characterization may be, if the policy stipulates the course by which the beneficiary's interest is to be nullified, he cannot be deprived of his right, unless the prescribed mode for its destruction is followed."
See, also, Farmer Coal and Supply Co. v. Albright,90 N.J. Eq. (Vice-Chancellor Foster) 132; Metropolitan Life InsuranceCo. v. Zgliczenski, 94 N.J. Eq. (Vice-Chancellor Lewis)300; Metropolitan Life Insurance Co. v. Clanton, 76 N.J. Eq.
(Vice-Chancellor Emery) 4.
The policy says a lump sum shall be paid six months after the company shall have received proof of the disability, not six months after the existence of the disability. In this case the proof was furnished only four days before payment was sought to be made, although the doctor announced that the disability had existed for nine months before that time.
This is not according to the terms of the policy and Mrs. Gemmell's interest could not be wiped out in such a manner. It is not shown that anyone in authority determined which of the two methods set out in the policy should be used and the certificates which should have been returned before the transaction was completed were not returned.
I believe Mrs. Gemmell is entitled to the money under this policy and will advise a decree accordingly. *Page 287